Thanks, Judge Gould. Your Honors, I'm Ian Fine on behalf of Petitioner NRDC, and I'd like to reserve five minutes for rebuttal. Okay. Counsel, I'll try to remind you, but of course you should watch your own time. And you can go over the time if you have questions from the panel that require answering that keep you going. But otherwise, if you could try to live with the time, that would be great. Will do. May it please the Court. Over ten years ago, NRDC petitioned EPA to ban the use of a dangerous pesticide in household pet products, where it can cause permanent damage to young children's developing brains. Four years ago, EPA told this Court that it was, It has now been more than 1,100 days since that final risk assessment confirmed that these products are unsafe and that there is, quote, Yet during the last three years, EPA has made no meaningful progress to resolve NRDC's petition, much less to begin proceedings to ban these dangerous products. It now says that it does not plan to do so for at least another year and four months. It is clear that this Court must step in and issue a writ of mandamus ordering EPA to act, given the many years of delay that have passed, EPA's pattern of broken promises, and its uncontested finding that these products are unsafe for kids. EPA estimates that as many as 10% of households with pets use these products. So every day of additional delay is another day that hundreds of thousands, if not millions of children, are being exposed to a pesticide in their homes that EPA concedes may be permanently damaging their brains. EPA points to only two things in an effort to defend its preferred timetable for responding to NRDC's petition, but neither can justify any further delay. First, EPA points to additional data that it requested from the manufacturer, notably only after NRDC filed this mandamus petition, about the degree to which its pet callers release the pesticide in liquid versus powder form. EPA's final risk assessment from three years ago found that all of these pet callers posed risks of concern to young kids, quote, regardless of the ratio of the liquid dust assumed. So while this additional data might allow EPA to fine-tune its estimated exposures, it is not going to change EPA's own underlying finding that the products themselves are unsafe. And in any event, EPA's 28J letter from just a few days ago confirms that this data cannot provide any basis for further delay because EPA has completed its review of this data over two months ago. So by EPA's own account, it has now completed its review of all of the data it needs to act on these unsafe products. Second, EPA points to its desire to delay resolving NRDC's petition until it completes its separate obligation to conduct a registration review for all of the pesticide's other uses. But EPA has previously recognized that by statute it, quote, must continue to respond to emerging risk concerns and not defer action until a pesticide's regularly scheduled registration review. That is for good reason. Congress created the registration review process as a backstop to make sure that EPA looked at all of the pesticide's uses at least once every 15 years. But Congress did not want EPA to delay taking action on dangers that it found in the meantime. The facts of this case demonstrate exactly why that is so. EPA already has all of the data it needs to act on these products. It simply does not make sense for EPA to refrain from taking action while it completes its registration review for other uses. In addition, EPA has now repeatedly delayed its own internal timetables for completing its registration review process without providing any explanation. So allowing EPA to delay resolving NRDC's petition pending its completion of the registration review based on its estimated or expected timetables that it is now giving this court is simply, as in Pesticide Action Network, a roadmap for further delay. In terms of the content of the writ, Your Honors, this court's thoughtful remedy discussion in community voice lays out some of the options available to the panel as well as an appropriate path forward for this case. Specifically, the court should first order EPA to respond to our petition within a short period of time, such as 60 or at most 90 days, by either denying our petition or initiating the cancellation process by sending a proposed Notice of Intent to Cancel to the Department of Agriculture and the FIFRA Science Advisory Panel. Second, and perhaps even more importantly, the court should retain jurisdiction until EPA takes a final judicially reviewable decision. The reasons for this are twofold. First, EPA has a legal obligation under the APA to conclude the matter presented to it. NRDC petitioned EPA to cancel the registration of these dangerous products. So simply beginning a cancellation process will not conclude the matter presented to the agency. EPA will not fulfill its obligation under the APA until it either denies NRDC's petition or it cancels the registration of these products, either of which would be judicially reviewable. The second reason why this court should retain jurisdiction until that time is, as the D.C. Circuit has explained, that the primary purpose of the writ in circumstances like these is to ensure that an agency does not thwart the court's jurisdiction by withholding a judicially reviewable decision. But that is essentially what EPA has been doing here. And precisely what would happen... Yes, Your Honor? This is Judge Murkia. Can I ask a question here? Assuming we grant the mandamus, couldn't EPA deny your administrative petition and just say that it needs more time to study the issue? And wouldn't that bring this back to square one? Your Honor, we do not believe EPA would be able to do that based on its own regulations and its own representations to this court. The only data that EPA has said that it still needs is the study about the exact percentage of how much of the pesticide is being released from the pet collars in liquid or powder form. And EPA's 28-J letter to this court confirms that it completed its review of that study over two months ago. So EPA, by its own account, does not have any additional study that it needs to do. Second, as we were discussing, EPA has itself recognized that it cannot... must continue to respond to emerging risk concerns and may not defer action pending its regularly scheduled registration review. So if EPA were to deny our petition on the basis that it was waiting to complete its registration review, it would be in violation of its own regulations. EPA, a different question here, promises here to respond to your administrative position by June of 2021. It seems like that request is being made in light of the fact that they are expanding their review to all products involving this pesticide, which is a distinguishing factor, I believe, than what occurred in the other cases that have been granted a writ in the Ninth Circuit. And I guess, does this distinguishing factor here make a difference? No, Your Honors, and it's not quite a distinguishing factor because this same registration review process applies to all pesticides. So EPA also had this registration review obligation regarding chlorperifos, which is the pesticide that this Court has repeatedly entered mandamus order against the agency on, and which is a sister pesticide to tetrachlorbenfos, the pesticide at issue here. So this same registration review process by which Congress had created this backstop for EPA to analyze all of the uses every 15 years applied just the same in that case. And as we were discussing, EPA itself has recognized that that registration review process does not give it a basis to decline to act on emerging risks in dangerous products as it learns of them, as it has here, as its own scientists have confirmed that these products are unsafe. Regarding the June 2021 date, Your Honors, I would point to the EPA's declaration that it submitted in support of its brief. Paragraph 32 lays out the timetable that it would like if it is allowed to delay responding to our petition until it completes its registration review. Paragraph 33 is the timetable in which it concedes that it can resolve our petition without completing registration review. So I would encourage Your Honors to take a look at that paragraph 33, which, for the reasons we just discussed, I think lays out the proper timetables that this Court should be looking at. In counsel, Judge Gould, if I could ask a related question. Assuming that the request by the NRDC was denied in an order by the EPA for the reasons or for reasons similar to what Judge McGeehan mentioned in her question, if that were the case, then I take it your point is then you have an appealable order and the issue could be briefed and appealed and you wouldn't have to be dealing with mandamus. That is exactly right, Your Honor. As we were discussing, the purpose of the writ here is to ensure that the agency does not thwart this Court's jurisdiction by withholding judicially reviewable decisions. We sincerely hope that if this Court orders EPA to act, it will act lawfully and begin to initiate the cancellation process as we've laid out. But if EPA were willing to deny our petition on those unlawful grounds we discussed a minute ago, then we should be able to bring that unlawful order back to this Court in a merits decision exactly as Your Honor just described, rather than waiting another year and a half for EPA to act at that point. If they're willing to take unlawful action now, let's come back here on the merits and argue over that. Let's not wait another year and a half for it to take unlawful action then. Every day that passes is another day that kids are being exposed to this dangerous pesticide in their homes when they are petting and playing with their pets. Respectfully, Your Honors, mandamus is warranted. Unless Your Honors have further questions, I'll reserve the remainder of my time for rebuttal. I have no questions. Unless Judge McGeer or Chief Judge Coulter right now, you should proceed to reserve your time.  Good morning, Your Honors. My name is Eileen McDonough from the Justice Department on behalf of EPA. With me at counsel table is Benjamin Wakefield of EPA's Office of General Counsel. Now, in response to what Petitioner raises, we would like to point out that EPA has indeed done substantial work on this issue. There was a response to the petition, and then the answer was brought to this court in petition for review. That matter was remanded because EPA was in the process of completing an updated revised health assessment, which was finished in 2016. At that point, the agency had indeed told the court that they expected to get an answer out within 90 days of the completion of that study. It was not able to do so because of the issue that came up regarding the question of whether the, I'm just going to call it the pesticide, would be released from the collars in form of liquid or powder. The studies that were done demonstrated that the answer to that question would substantially affect the level of risk. The more liquid involved, the lower the level of risk. Now, this is important, particularly important in the context of a pesticide such as this that is regulated solely under FFRA, not under the Federal Food and Drug and Cosmetics Act, which brings in more complicated questions that included those present in a chlorofirus litigation. FFRA itself is a risk-benefit statement statute. So in order to decide whether action is required against a permit or against a permitted pesticide, the agency has to determine whether there is, and I'm reading from the statute, an unreasonable risk to man or the environment taking into account the economic, I'm sorry, economic, social, environmental costs and benefits. So with this, you have a two-part analysis. The torsion study was the last piece of information that EPA required to evaluate the health assessment portion of that. The agency determined in December that that study was complete and they are now moving forward more expeditiously than originally predicted. The next step will be that the health and risk assessment for all of these pesticides products will be released in June or completed in June of 2021. At that point, you will have the agency's answers on both the risks and the benefits and how they should be balanced. Council, Judge Gould, if I could ask you a question on that. You have a specific application here from the NRDC asking for action and alleging that your own records indicate that there are risks to children from any remnants of this pesticide that get in their environment because of the flea collars, et cetera. So my question for you is, why do you need to deal with all of the products that contain this chemical rather than respond after more than a decade on the petition that was filed? Well, the agency has presented to court with the requested remedies under either of those prongs. What the agency has explained is that, first, at this point, the registration review and the particular product review are coming together fairly closely in time. There's about a six-month difference if the court allows the agency to complete both at once as opposed to completing the response to NRDC, which would then delay the review of the overall class of pesticides, and obviously there are parties interested in that as well. Moreover, there are distinct benefits to allowing the agency to address pet products as part of the larger class. First of all, it does enable the public to look at and understand the entire risk and benefit package for all of those. Secondly, there is the possibility that during the administrative proceedings with respect to the other aggregate products, issues or questions could be raised that would affect the agency's conclusions on the pet products in specific, which could require the agency to go back and reopen the pet product decisions. And finally, there are just very practical advantages. For example, now, instead of doing two studies, one on the health risk assessment for the pet products and one for everything else, the agency has been able to, or will as of June, have done one study that covers both and can be used for both purposes. I'm sorry, Your Honor. Ms. McNair, this is Judge Murky. I just wanted to follow up on that. So these advantages that you describe, I guess, has EPA done an assessment and found that they outweigh the risk that they already have identified to children based on the chemicals in these collars? No, they have not in terms of quantifying the benefits of doing them together versus the pet product NRDC response separately. We have given you the opinion of the head of the FIFRA program, but we have not gone beyond that to quantify it. What we have done, however, is provided the court, as petitioners noted, with the alternate schedule that EPA could proceed under if the court determined that that was the remedy of choice. And because the torsion study has been completed early, EPA, according to the declaration as adjusted, would be finishing that process by December of 2020. And that, Your Honor, is in paragraph 33 of the declaration, if you were looking for it. I guess in the meantime, though, while this is pending, the risks that you have already identified based on your revised review are out there for the children. That's true. But FIFRA does require that the agency also consider benefits before it proceeds to any final concern. Counsel, Judge Gould, that's certainly true. But isn't there a point at which, like, enough is enough and delay is too long and that a party is entitled to get a ruling one way or the other on their application so that the issue is appealable and it can proceed in the appellate courts? Yes, Your Honor, and the question is, you know, what is that point and how does the agency get there? To cut short steps that are required under FIFRA or evaluations that are required do not ultimately advance the ball because then you have weaknesses that can be challenged. What would happen here is that if at the end of the risk assessment that's going to be finished in June, EPA, assuming that we go ahead with the PEP products separately, EPA would, once the conclusions are drawn, be able to respond within 30 days to say petition denied if the agency concludes that the studies have shown that the standards under FIFRA for changing the registration are not met. But if there are potential risks of concern, then EPA has to take additional time to consider whether mitigation is possible, i.e. lowering the amount of the active ingredient in these pest collars or other steps that the manufacturer may take that would resolve the issue and leave their registration either intact or require an amendment as opposed to a cancellation. Counsel, why is it that all those points couldn't be considered after an initial decision on the PEP products so that the counsel for NRDC, if they disagreed with it, could seek appellate review and could seek a stay or injunction if they thought the facts justified? We're talking about something that, as I understand it, the agency's own findings from its earlier study said was damaging to children. Well, there are two parts of that, Your Honor. First, EPA in its experience has found that sometimes negotiation with the registrant can lead to either one voluntary cancellation, as Bayer has already done with this particular pesticide, or it can lead to an amendment that resolves the concern issue. The reason that those practical approaches can be important is because the process for canceling a registration under FFRA is very complicated. Even to do a public issuance of a proposed notice of intent to cancel, EPA first has to give the agriculture, and this is by statute, has to give the agriculture department and the relevant scientific advisory panel, I believe it's 60 days notice, to allow those bodies to make any comments if they so choose. The scientific advisory panel has the option to call a hearing on 30 days notice at their discretion. And if either of those entities do advance objections to EPA's proposal, then the course is to publish everything in the Federal Register, allow for comment, and at that point EPA makes a decision whether to go ahead publicly with the proposed notice of cancellation or intent to cancel or not. And if they go ahead at that point, the notice of cancellation, the proposed notice is issued, and that, in effect, triggers the start of an adjudicatory proceeding if one is requested by the registrant. And that's administrative trial before ALJ. NRDC could probably intervene, although obviously I'm not predicting what an ALJ would say. It's a long process. And when they're done with the adjudication, then there's appeal rights to the Environmental Appeals Board and then ultimately to the courts. So while it may sound like trying to negotiate a solution with a registrant is putting things off, if you can avoid that very prolonged progress process, it actually advances the ball considerably in the interests of everybody. Does the record reflect what EPA was doing, what action it was taking in 2017 and 2018? Because it appears that EPA became very conscientious once the writ of mandamus was filed and five days later issued this data call-in to this company to perform the torsion study. But in 2017 and 2018, this pesticide seems to have fallen off the review schedule, and it's just unclear from the record what action, if any, EPA was taking during that roughly two-year period. At that point, EPA was working with HARTS to get them to perform the torsion study. HARTS did indeed put in several studies in our brief. We note they did one in August of 2019. But they were not the type of study, the torsion study, that EPA wanted. So at that point, it was clear there was not going to be any voluntary compliance. So at that point, they issued the- So that took roughly two years, apparently. Yes. Okay. So I see my time is almost up, but we would ask the court, first, we don't believe EPA's delay was unreasonable. Second, we believe that the agency should be granted the timetables it requests. And third, if the court does supply a remedy, we ask that you carefully couch it in the terms of what is allowed under FFRA. In contrast to the cases such as PANA, which were providing the remedy for EPA to complete a rulemaking, it was not the kind of detailed structure required by FFRA. So if there are no questions. Thank you. I have no questions. Thank you, counsel. Thank you, Your Honors. They will hear from a petitioner who has some rebuttal time. Thank you, Your Honors. First, I just want to point out that every single thing that EPA just said that it still wants or needs to do are things that it knew about when it told this court four years ago that it would be able to act on our petition within 90 days of finalizing a risk assessment. It knew of this liquid powder question. It knew of the need for risk-benefit balancing. And it knew of its separate obligation regarding registration review. But despite all of that, it told this court that it intended to act within 90 days, and this court relied on that representation when it granted the earlier voluntary remand without retaining jurisdiction or imposing a deadline. And now here we are again four years later. Your Honor, counsel also talked about advantages that they see in doing the registration review together with responding to our petition. But it does not point to anything that it thinks could result from the registration review process that would in any way change or undermine its existing finding that these products are unsafe. It said that it has already concluded that its study of that question, it was the last remaining piece of data it said it needed, and that is now done. So if we look back at their bullets in paragraph 33 of their declaration, which is the timetable that they've set out if registration review is put aside, the first bullet is three months to determine whether the completed study is scientifically acceptable. They completed that two months ago, they tell us. Then they need three months to prepare a revised risk assessment. Over two months of that have already passed, so they now need less than 30 days, according to their own timetable. The last bullet is that if they find that there are potential risks of concern, which, given the final risk assessment, found that there are risks of concern regardless of the liquid powder issue, it will almost certainly find here. They have now asked this Court for six months to consider mitigation possibilities and converse with the registrant. But again, this EPA previously told this Court it could act within 90 days of finalizing a risk assessment, and it has not explained why it couldn't do the same here. As Judge Gould was pointing out, a lot of these things that they describe in this bullet are things that they can do after initiating the cancellation process. The thing that they've described that they want to do before then is to have these conversations with the registrant. But as Chief Judge Cole was pointing out, two and a half years passed with those kinds of conversations, and yet nothing resulted from it. EPA ultimately had to do a data column. In conclusion, Your Honors, it has been over 10 years since NRDC petitioned EPA to ban these unsafe products. Every day that passes, hundreds of thousands of children are being exposed to a dangerous pesticide in their homes that EPA concedes may be permanently damaging their brains. The Court should issue a writ of mandamus, order EPA to respond to our petition within a short period of time by initiating the cancellation process, and the Court should retain jurisdiction until EPA enters a final, judicially reviewable decision. I have one question, Mr. Fine. Ms. McDonough just said that if we order them to proceed, that we do so within the CFRA regs or guidelines. Do you agree with that? Your Honor, we are not asking... Sorry, Your Honor. I just wanted to know if you agreed with that. We're not asking for anything other than that. We're asking for them to respond within 60 days either by denying the petition or initiating the cancellation process under CFRA by sending a proposed notice of intent to cancel to the Department of Agriculture and this CFRA Science Advisory Panel. We would encourage Your Honors, for all the reasons we were just discussing and EPA has We would encourage Your Honors, as in community voice, to also consider imposing a deadline on that cancellation process. EPA can then, if that cancellation process drags on, EPA can always come back to this Court and ask for an extension of that deadline, but given the history here, we are very concerned that absent some sort of deadline like that, this will just continue to drag on and continue to expose children to this dangerous pesticide in the meantime. Counsel, I'm scheduled with one question. If we were to grant relief to your client, to the petitioner, rather than setting a deadline for a cancellation process if the agency goes that way, would it be adequate to just require periodic status reports if they say we've initiated the cancellation as opposed to just denying your petition? That's right, Your Honor. We do really want to stress that it's important to us that the Court retain jurisdiction until there's a judicially reviewable decision. Community voice describes, I believe, the status report option as one option that would be available to the panel. For the reasons we've discussed and the years of delay that have passed, we would prefer that the Court take the path that it took in community voice and impose a deadline on those proceedings, which EPA can always come back and ask for an extension to if the circumstances warrant. But of course, Your Honor, if the panel felt more comfortable requiring status reports, that would also be a remedy that would be available to you. Okay, thank you, counsel. Thank you, Your Honor. Unless there are further questions from Chief Judge Cole or from Judge Murgia, I think that this case, number 19-710324, with NRDC versus the U.S. EPA, shall be submitted now. Thank you, Your Honor. Thank you.
judges: Cole Jr., Gould, Murguia